## Gordon v. Ray, Jr.

*William A. Goichman*, for plaintiffs.

*McEldrew, Hanamirian, Quinn, Bradley & D'Amico*, for defendants.

CHUDOFF, J., June 13, 1973.—In this action to recover damages for alleged personal injuries resulting from the striking of the minor-plaintiff by an automobile allegedly at or near an intersection in Philadelphia, the jury returned a verdict in favor of defendants on February 28, 1973. Plaintiffs filed a motion for new trial on March 2, 1973.

On March 29, 1973, plaintiffs' attorney filed a rule to show cause why the City of Philadelphia should not assume the cost of the civil transcript of the notes of testimony, on the ground that plaintiffs are entitled to proceed in forma pauperis. Argument on the rule was heard before the trial judge on April 19, 1973, whereby the city vigorously contested the rule. The court continued the case, pending the taking of depositions on the question as to whether or not plaintiffs were actually indigent, and ordered plaintiffs' counsel to furnish the court with (1) a copy of his power of attorney, and (2) certification of all costs advanced by him, from the date of his retainer to the date of filing the motion for new trial.

After an extremely careful study and review of the above records, and after an extensive independent research of the crucial issue involved, this court concludes that albeit plaintiffs are factually indigent, where plaintiffs' counsel is representing them with a power of attorney on a contingent fee basis, the duty is upon the attorney in that case to advance all costs, including the cost of transcripts and the cost of appeals.

By way of argument, plaintiffs' counsel argued that Lee v. Habib, 424 F. 2d 891 (1970), and Boddie v. Connecticut, 401 U.S. 424 (1971), both of which are civil cases, are applicable to the case at bar and, therefore, entitled plaintiffs to a free transcript.

In the recent case of Boddie, supra, the United States Supreme Court struck down a Connecticut statute which required prepayment of court and service costs as a prerequisite to access to the court in divorce proceedings. In essence, the court, through Justice Harlan, held that: (1) where the State has monopolized the means of resolving a dispute, i.e., divorce, and (2) where the underlying right or relationship affected by denial of access to the courts is "fundamental," i.e., marriage, the prerequisite of fee payment denies due process of law to those who cannot afford to pay.

Whether court fees and service costs can be required in other forms of litigation was not raised before, or decided by the Boddie court. There is some reason, however, to suggest the court would order waiver of court expenses in certain other forms of litigation. The most obvious instance would involve cases where the State requires a person to go into court for relief. This was a crucial factor for the majority in Boddie and is present in other types of domestic relations litigation,

such as legal separation, annulment, child custody, adoption and nonsupport actions.

A similar proceeding, although not involving the same vital interests, would be change-of-name suits. The individual is thereby attorned to the State and can seek relief only from the State.

The same may also hold true to suits against the State. It is submitted that it would be unconscionable if a State could engage in wrongdoing and then bar an indigent victim from its courts. Particularly is this true in view of the vital interests which are often at stake in the relationship between the poor and the State.

The final area where Boddie might apply would involve suits between private individuals, where the State neither has asserted an interest in the subject nor is a party. Private parties can settle their own disputes; there are alternatives to court action. Yet poor persons, faced by an uncompromising opponent, may have no realistic opportunity to bargain and, ergo, they may not be able to gain access to the courts.

The Habib case, supra, was an eviction case decided by the Court of Appeals for the District of Columbia, which held that plaintiff should be given a free transcript in a civil eviction matter, under the theory that since defendants were entitled to a free transcript in criminal cases, transcripts free of charge should not be denied in civil cases because of the equal protection of law's theory of the Constitution of the United States:

"The equal protection clause applies to both civil and criminal cases; the Constitution protects life, liberty and property. It is the importance of the right to the individual, not the technical distinction between civil and criminal, which should be of importance to

a court in deciding what procedures are constitutionally required in each case": 424 F.2d at 901.

The right of all to have free access to the courts is fundamental to our democratic system. This right cannot be conditioned on the payment of a fee, where such condition precludes the exercise of the right.

The United States Supreme Court has recognized the essential nature of the transcript: Hardy v. United States, 375 U.S. 277 (1964); Holmes v. United States, 383 F.2d 925 (1967).

Mr. Justice Goldberg, in his concurring opinion in Hardy, said:

"As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law": 375 U.S., at 288.

It has long been the law of this Commonwealth that stenographic notes of testimony must be taken "in any trial of fact, at law or in equity," and that in any case in which an appeal is taken to the Supreme or Superior Court, the notes must be transcribed and "payment for which shall be made in the same manner as if directed by the court": Act of May 1, 1907, P. L. 135, secs. 3, 7, 17 PS §§1804, 1809.

In addition to the above, it behooves us to note the Act of May 11, 1911, P. L. 279, sec. 3, 12 PS §1198, which provides:

"The official stenographer shall transcribe the notes of the evidence taken upon the trial of any case, under the following circumstances and those only: (a) When directed by the court so to do; or (b) when an appeal has been taken to the Supreme or Superior Court; or

(c) when he shall be paid for a copy thereof by a person requesting him to transcribe it."

In the case at bar, this court has not ordered the official stenographer to transcribe the notes of testimony. Furthermore, plaintiffs have only made a motion for a new trial and have not appealed to the Superior Court. Accordingly, subsection (c) would apply and, therefore, the requesting party or plaintiffs' counsel must pay for a copy of the notes of testimony.

In Clift v. Philadelphia, 41 Pa. Superior Ct. 638 (1910), the court said:

"The statute does not itself require copies of the notes to be furnished to the plaintiff and defendant at the expense of the county, it is only a grant of power to the courts to make an order in 'any cause' directing that there shall be three typewritten copies of the stenographic notes made, one of which shall be supplied to the plaintiff and one to the defendant . . . The statute was a grant of power to the courts to order, in any cause, that typewritten copies of the notes be furnished to the plaintiff and defendant."

The case of Briggs v. Erie County, 98 Pa. 570 (1881), although dealing with an earlier statute concerning the cost of the transcript of the notes of testimony, clearly holds that the liability of the county is confined to such transactions as the court may order to be filed, or as were filed by the stenographer himself in the performance of his duty; and the county cannot be held liable for a transcript made and filed of record at the request of counsel.

In O'Donnell's Appeal, 56 D. & C. 462, 33 Del. Co. 480 (1946), it was held there also that the county is not liable for the cost of the transcript of the notes of testimony furnished to a party to the litigation, in the absence of an order of the court.

So, too, in Anderson v. Guerrein Sky-Way Amuse-

ment Co., 29 Erie 94 (1946), where it was held that fees for stenographic services in transcribing testimony are chargeable to the party who orders the testimony.

In the case of Shrum v. Penna. Electric Co., 440 Pa. 383 (1970), it was held that it is the duty of the party *moving for a new trial*, not that of the trial judge, to obtain the transcript of the trial record. The Pennsylvania Supreme Court, in their per curiam opinion, clearly held that the *moving party* must pay for the transcript, unless it is within the exception of 12 PS §1198. (Italics supplied.)

In this case, the City of Philadelphia avers that to allow free transcripts for all civil litigants would only serve to foment unnecessary civil litigation and, in an attempt to quell this, President Judge Vincent A. Carroll, of the Court of Common Pleas, Philadelphia County, issued the following memorandum on January 13, 1970:

"Notes of testimony in civil cases should be transcribed only when ordered by a party who shall pay for the same and the County of Philadelphia should not be billed for transcription in a civil case."

Plaintiffs argue that President Judge Carroll's memorandum is a "general order" and, therefore, is invalid due to the holding in Clift, supra, where it was held, inter alia, that the court must examine each particular case to determine for itself whether such an order should be made, and a general order of court requiring that notes be transcribed at public expense is invalid.

Assuming arguendo that the then President Judge Carroll's memorandum was held to be invalid, it is clear that the instant case would not be affected by the validity or invalidity of the memorandum, since the trial judge here exercised fair, just and proper

judicial discretion in view of the facts and circumstances of this case, in determining whether the county or the moving parties should be subjected to the burden of the expenditure which the court was empowered to order. As was pointed out earlier, this court continued the case pending the taking of depositions on the question of factual indigency and for the court to review plaintiffs' power of attorney and certification of costs by plaintiffs' counsel. If ever there was a case where the trial judge did review each case on its own peculiar facts, circumstances and necessities, this is such a case.

After reviewing plaintiffs' deposition, power of attorney and certification of costs by plaintiffs' counsel, this court concludes that the interest of justice and the viability of an adversary system is not impaired when it requires plaintiffs' counsel to advance the cost of obtaining the trial transcript, even though the court has determined that plaintiffs are factually indigent.

In the instant case, Mr. Goichman agreed to advance all court costs, since he represented *plaintiffs on a contingent fee basis.* The following is plaintiffs' power of attorney:

"KNOW ALL MEN BY THESE PRESENTS:

"The undersigned do hereby irrevocably nominate, constitute and appoint WILLIAM A. GOICHMAN, ESQUIRE as my/our true and lawful attorney in the matter of my/our claim for damages sustained on the 22nd day of June, 1967, against any person or firm or corporation who may be responsible therefor, and I/we do further hereby authorize my/our said attorney to bring suit or to settle and compromise the said claim.

"And I/we do hereby agree that out of whatever sum is secured from the above defendant, either by way of settlement or verdict, the expenses of suit,

investigation, or the fees of witnesses, if any, shall be first paid in full, and of the balance so remaining, the said attorney shall retain ⅓ part thereof, and to further secure the same do hereby set over unto my/our said attorney the said part thereof.

"Should no money be recovered by suit or settlement, said attorney is to have no claim against me/us for services rendered.

"I/we hereby authorize said attorney to pay bills for medical and hospital treatment by payment directly to the physicians or hospitals concerned.

"IN WITNESS WHEREOF, I/we have hereunto set my/our hand and seal the 22nd day of January, 1968.

"Signed, Sealed and Delivered:

"In the presence of:

/S/ GEORGIAN GORDON      (SEAL)

_____ :

                              (SEAL)
_____ :     _____ (SEAL)"

Briefly stated, in contingent fee cases, counsel for plaintiff advances all court costs and investigative expenses, until the case is *finally consummated.* If he is so successful in securing a recovery, the costs are deducted from the gross amount of the recovery.

In the case at bar, plaintiffs' counsel certified to the court that up to and including the motion for new trial, he had expended the sum of $442.81 in costs, investigation fees and preparing the case for trial.

If Mr. Goichman himself were indigent, or if he represented plaintiffs without a contingent fee agreement, and did not agree to pay any court costs, this court submits that the Habib and Boddie cases might be applicable, as long as the Boddie criteria is satisfied.

Therefore, the court makes the following

## ORDER

And now, June 13, 1973, plaintiffs' rule to show cause why the City of Philadelphia should not assume the cost of the civil transcript of the notes of testimony, on the ground that plaintiffs are entitled to proceed in forma pauperis, is discharged.